ALASKA STATE EMPLOYEES AS-
SOCIATION/AFSCME LOCAL
52, AFL–CIO, Appellant,

v.

STATE of Alaska, Appellee.

No. S–10226.

Supreme Court of Alaska.

July 25, 2003.

Jay W. Trumble, General Counsel ASEA/
AFSCME Local 52, Anchorage, for Appel-
lant.

Patrick J. Gullufsen and Kathleen Stras-
baugh, Assistant Attorneys General, and
Bruce M. Botelho, Attorney General, Juneau,
for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

The Alaska Child Support Enforcement
Division terminated an administrative clerk
after learning that she had been convicted of
felony theft of public money. In the ensuing
grievance proceeding, the arbitrator ruled
that the termination was not for "just cause"
and ordered the grievant reinstated. Be-
cause the grievant's position gave her access
to sensitive information and was potentially
subject to intense public scrutiny, we agree
with the superior court that the arbitrator
committed gross error by failing to find just
cause. We therefore affirm the order vacat-
ing the arbitrator's decision.

## II. FACTS AND PROCEEDINGS

The grievant had been employed as an
administrative clerk by the Child Support
Enforcement Division (CSED) of the Alaska
Department of Revenue since 1996. She
performed various clerical duties, including
updating the computerized database for par-
ents in the child support system. The data-

base contains personal information about parents, including Social Security numbers, bank account numbers, and other sensitive, private information.

In 1999 CSED learned that the employee had pleaded guilty in 1998 to felony theft of public money, in violation of 18 U.S.C. § 641. Her written plea agreement with the United States Attorney stated that between September 1995 and June 1998 she had knowingly and fraudulently withheld child support income and employment income information when she applied for food stamps. As a result, she received food stamps exceeding her legal entitlement. The United States District Court for the District of Alaska ordered her to make restitution of $8,119.

After the state terminated her employment in 1999, the Alaska State Employees Association (ASEA), her Public Employment Relations Act representative, filed a grievance seeking her reinstatement.

In response the state maintained that retaining the grievant would send the wrong message to other employees and would place the department in the position of retaining a dishonest employee, damaging CSED's "reputation for integrity."

Per the collective bargaining agreement (CBA) between the ASEA and the state, the parties arbitrated the dispute to determine whether the grievant had been discharged for just cause. The arbitrator ruled in June 2000 that the "[g]rievant's discharge was not for just cause as required by Article 14 of the [CBA]." Article 14 requires that "[d]iscipline and discharge ... be for just cause." The arbitrator also ruled that the discharge was

to be rescinded and that the grievant was to be reinstated to her former position.

The state filed a superior court petition to vacate the arbitration award. Both sides then moved for summary judgment. The superior court granted the state's motion for summary judgment on the ground that "the arbitrator committed gross error in not using the appropriate standard to determine just cause."[1] ASEA then filed a motion for reconsideration, which the superior court granted. On reconsideration the superior court permitted the parties to submit additional briefing discussing the standard for just cause termination. The superior court's August 28, 2001 order reaffirmed its earlier order granting summary judgment to the state.

ASEA appeals.

## III. DISCUSSION

### A. Standard of Review

While we have in the past declined to decide definitively the standard of review of compulsory grievance arbitration awards, we have generally applied the gross error standard in reviewing grievance arbitration awards.[2] But we apply "the less deferential 'arbitrary and capricious' standard ... in cases of compulsory interest arbitration."[3] We have not yet addressed whether compulsory grievance arbitration proceedings like those here are subject to the gross error standard of review.[4] We give an arbitrator's decision great deference.[5] But this deference need not be as wide-ranging when a dispute is of a "contractually formative nature,"[6] because we can more easily review

---

1. Remarkably, the parties have not included the original summary judgment order in the excerpts of record. *See* Alaska R.App. P. 210(c)(2).

2. *Pub. Safety Employees Ass'n, Local 92 v. State*, 902 P.2d 1334, 1336 (Alaska 1995).

3. *Id.*

4. The CBA is governed by AS 23.40.210, which requires mandatory grievance arbitration proceedings. AS 23.40.210(a) states in relevant part:

 Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement. The agreement may include a term for which it

will remain in effect, not to exceed three years.... The agreement shall include a *grievance procedure which shall have binding arbitration as its final step*. Either party to the agreement has a right of action to enforce the agreement by petition to the labor relations agency.
 (Emphasis added.)

5. *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987).

6. *Pub. Safety Employees Ass'n, Local 92*, 902 P.2d at 1336 (discussing review standard when dispute is of "contractually formative nature").

the legal relationship between the parties in the dispute. Grievance arbitration lacks this transparency; greater deference is therefore appropriate. Nonetheless, we do not have to decide here which standard of review applies. Under either standard the result here would be the same. We therefore apply the more deferential "gross error" standard.

**B. Based on the Arbitrator's Findings, the Arbitrator Committed Gross Error in Ruling that CSED's Termination of the Grievant Was Not for Just Cause.**

 ASEA argues that because the arbitrator was not bound by Alaska law in determining the meaning of "just cause" as that term is used in the CBA, the superior court erred by vacating the arbitrator's decision. The state responds that because the CBA did not define "just cause," Alaska law applies. We emphasize at the outset that we are reluctant to disturb an arbitrator's decision even where we might reach a different conclusion.[7] Moreover, courts routinely accord arbitrators a great deal of discretion.[8] But we will reverse an arbitrator's decision if our independent review of the decision indicates that the arbitrator has made an "obvious and significant" mistake.[9]

**1. Interpreting Alaska's "just cause" decisions**

**a. The *Manning* and *Braun* decisions**

· The term "just cause" as it applies to employee dismissal has been part of the parties' previous CBAs since at least 1984. An early CBA covering the period 1984–86 stated: "Just Cause means but is not limited to, incompetence, unsatisfactory performance of duties, unexcused absenteeism, drunkenness, dishonesty and gross disobedience." The 1990–92/93 CBA included "just cause" in its discussion of management rights and discharge:

Article 4–Management Rights

[Management's] functions, rights, powers and authority include, but are not limited to:

. . . .

6. Discipline, suspend, demote or dismiss employees for *just cause;* . . . .

Article 14–Notice of Discipline and Discharge

A. Discipline and discharge shall be for *just cause.*

(Emphasis added.)[10]

The superior court ruled in its summary judgment order that the arbitrator "committed gross error by imposing her own definition of just cause over that of the supreme court." Because the CBA applicable here did not define the term "just cause," the superior court initially based its ruling on our holding in *Manning v. Alaska Railroad Corp.*[11] Quoting *Braun v. Alaska Commercial Fishing & Agriculture Bank,*[12] we held in *Manning* that " 'just cause' for discharge is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial

---

**7.** We held in *Department of Public Safety v. Public Safety Employees Ass'n* that "[a]s a matter of policy and law, we are [loath] to vacate an award made by an arbitrator.... A court may not vacate an arbitrator's interpretation of a collective bargaining agreement in favor of its own merely because it finds its own to be better reasoned." 732 P.2d at 1093.

**8.** "Arbitrators often construe collective bargaining agreements in light of statutes and case law[, but in] some cases ... arbitrators have refused to apply external law in rendering their decisions." MARLIN M. VOLZ & EDWARD P. GOGGIN, ELKOURI & ELKOURI, HOW ARBITRATION WORKS, at 486 & nn. 76, 78 (5th ed.1997). The authors cite a number of cases, including *Peabody Coal Co. Mine No. 10,* 98 LA 882, 884

(1992) (stating arbitrators do not generally base their decisions upon external law unless contract directs arbitrator to do so). *See id. But see St. Louis Tel. Employees' Credit Union,* 97 LA 412, 416 (1991) (affirming arbitrator's ruling to uphold employer's termination based on employee's violation of state law, despite lack of "just cause" as defined by contract).

**9.** *State v. Pub. Safety Employees Ass'n, Local 92,* 798 P.2d 1281, 1285 (Alaska 1990).

**10.** The record does not contain a complete copy of the applicable 1996–99 CBA.

**11.** 853 P.2d 1120 (Alaska 1993).

**12.** 816 P.2d 140 (Alaska 1991).

evidence and (2) reasonably believed by the employer to be true." [13]

ASEA argues that the superior court erred because the arbitrator was not required to rely on Alaska law. Alternatively, ASEA argues that *Manning* is distinguishable because it did not involve a public employee and did not proceed to arbitration. ASEA similarly argues that *Braun* is distinguishable because "there was no collective bargaining agreement extending just cause discharge protection to plaintiff." The state responds that *Braun* merely served the purpose of defining "just cause" in the employment context and that *Manning* is relevant because it involved a collective bargaining agreement like the one in this case.

The applicable CBA does not define "just cause." [14] The superior court stated that "arbitrators are ... bound by the supreme court's rulings, unless the parties have contracted otherwise. Here, the agreement did not contain a definition of the term just cause. Therefore, the arbitrator committed gross error by imposing her own definition of just cause over that of the supreme court." (Internal footnote omitted.)

The superior court did not have to go so far. The gross error in this case goes more to the application of the chosen standard than to the choice of a standard. The superior court is correct that the absence of an explicit definition of "just cause" in the CBA indicates that our prior rulings would be an appropriate starting point. But the arbitrator's use of a well-reasoned alternative definition would not alone constitute gross error. We do not need to address in this case how far an arbitrator's definition of "just cause" could depart from our prior rulings, because we conclude that the arbitrator committed gross error in applying the standard she chose.

The arbitrator stated that the "meaning of the term 'just cause' in the collective bargaining arena has developed over many years of arbitration practice." She did not explain how her application of "traditional just cause standards" differed, if at all, from our prior cases, but described the standard she applied as follows:

Under traditional just cause concepts, an employer must establish the existence of just cause based on the reasons on which it relied at the time of discipline. It is not enough that an employer was convinced by the evidence available to it at the time. The employer must submit that evidence so its veracity may be tested and considered along with evidence proffered on the employee's behalf.

Due process is an essential part of just cause. Before making a disciplinary decision, an employer must make a reasonable and fair investigation of the alleged misconduct. The accused employee must have notice of the specific charges and an opportunity to give his/her side of the story before a final decision is made. Factors upon which an employer did not rely at the time, or which are not established by the evidence at hearing, do not support just cause.

The arbitrator found that the "[g]rievant pleaded guilty to felony theft of public money." She also found that the grievant's plea agreement stated that the grievant "knowingly and fraudulently withheld child support income and employment income information in [the grievant's] application for food stamps." The state offered the affidavit of State Labor Relations Analyst Melanie Millhorn in support of its summary judgment motion.[15] Millhorn affied that:

13. *Manning*, 853 P.2d at 1125.

14. One of the tests ASEA articulates for the just cause standard is discussed in Part III.B.2.

15. ASEA argues that Millhorn's recounting of Barbara Miklos's testimony is inadmissible hearsay and that the superior court erred in not ruling on admissibility. We disagree. Millhorn's testimony was not offered "to prove the truth of the matter asserted"—i.e., that the grievant's position with CSED was one of public

trust. Alaska R. Evid. 801(c). Instead, Millhorn's affidavit explained the CSED director's own belief why she thought the grievant's termination was for just cause. The arbitrator's findings taken alone were sufficient indication that the grievant's position was one of public trust and potentially subject to great public scrutiny. For instance, her findings establish the grievant's access to confidential information, including bank account numbers, Social Security numbers, employment information, and addresses.

Barbara Miklos, the Director of CSED who made the decision to terminate the grievant[,] ... emphasized [that] the nature of CSED's mission, collecting and dispersing child support money, ... is a very controversial, highly scrutinized function that frequently generates attacks against the agency. [Miklos] testified that it was her opinion, and the basis of her decision, that to retain an employee with a conviction of this nature could do substantial damage to the agency's image and reputation and conflicted with the CSED's mission and responsibilities.

There is evidence in the record that the grievant's position was one of public trust and that CSED itself relied on the public's trust in carrying out its duties. Significantly, the arbitrator's decision quoted the state's personnel hiring rules, which state for applicants with prior felony convictions:

In making the determination of whether an applicant should be disqualified for a position, the director may consider the nature and seriousness of the offense; the kind of position for which the applicant is applying and the requirements of that position; ... and any aggravating, mitigating, or other facts or circumstances which may have a bearing on the suitability of the applicant for employment in the position sought.

The state's hiring rules indicate that the state may refuse to examine or may disqualify applicants based solely on a conviction that may have a bearing on their ability to effectively perform their duties. This is no less true after an individual is hired and becomes a permanent employee, even though the employee is then offered the CBA's additional protection of dismissal only for just cause.[16]

The arbitrator's decision stated that just cause requires "[t]he employer [to] submit ... evidence so [that] its veracity may be tested and considered along with evidence proffered on the employee's behalf." The grievant's conviction was undisputed in this case. The arbitrator's findings establish that the grievant had access to confidential information and held a position of trust with CSED. Given the arbitrator's findings, we hold that the arbitrator committed gross error in determining that the termination was not for just cause.

### b. The *Cassel* decision

The superior court order granting ASEA's motion for reconsideration of the order vacating the arbitrator's decision instructed the parties to consider *Cassel v. State, Department of Administration*.[17] ASEA argues that *Cassel* "does not support the proposition that the *Braun* standard of just cause should be applied within the public sector collective bargaining context." ASEA argues that *Cassel* was an administrative appeal involving a probationary employee who "did not have access to the arbitration procedure wherein the traditional standard of just cause would apply." The state responds that *Cassel* merely imported the *Braun* framework "into a collective bargaining agreement covering public employees as the necessary basis for the discharge of a probationary employee."

Because we decided *Cassel* in 2000, its relevance to the 1996–99 CBA is minimal. The superior court merely requested the parties to consider *Cassel* in their briefing for reconsideration. That case was not the basis for either of the superior court's orders granting summary judgment to the state.[18]

---

**16.** ASEA argues that the state should have "convey[ed] to the Union that *Braun's* wrongful discharge definition of just cause somehow set aside the parties agreed upon definition of just cause." But there was no "agreed upon" definition in the CBA. The state therefore had no duty to make ASEA aware of the likelihood of *Braun's* application to the CBA.

**17.** 14 P.3d 278 (Alaska 2000).

**18.** The discussion of *Cassel* in the superior court's August 2001 order was only tangential to its holding. Indeed, the superior court's reason for granting reconsideration was to allow ASEA an opportunity to provide support for its claim that there were no cases applying *Braun* to a collective bargaining context. The court stated:

[U]pon review the court has decided ASEA should be allowed to present arguments regarding the use of the just cause standard in a collective bargaining context focusing on cases such as *Manning*. To aid counsel in this quest the court notes that both ASEA and the State of Alaska ... should also consider *Cassel v. State, Department of Administration*.

## 2. The seven tests of just cause

ASEA argues that the parties' bargaining history requires a particular interpretation of just cause that involves "seven tests of just cause."[19] ASEA argues that "[d]espite its recent assertion to the contrary, the State's history demonstrates its adherence to the seven tests." ASEA asserts that arbitrators routinely employ the seven-tests approach. The state responds that "[t]he evidence ASEA offers to support [its proposed] custom or usage . . . is confused, unidentified in many instances, in part contradictory and often without context."

The arbitrator's decision does not explicitly employ the seven tests of just cause, and there is no indication that the arbitrator implicitly applied those tests. Similarly, ASEA did not rely on the seven-tests theory in the superior court in either moving for summary judgment or opposing the state's motion for summary judgment. We will not address for the first time on appeal an issue the appellant failed to raise below.[20]

We hold that the superior court did not err in vacating the arbitrator's decision on the grounds of gross error.

## C. The Superior Court Did Not Err in Vacating the Arbitrator's Decision Without Remanding to the Arbitrator.

ASEA briefly argues that the superior court, having vacated the arbitration award, erred by not remanding the case to the arbitrator. ASEA contends that the superior

court's order "left the Grievant in this case without a remedy." The state responds that there was no error and that "[n]o legal authority is cited to support this proposition and no rationale is articulated that would justify remand to the arbitrator."

ASEA cites no legal authority to support its contention and its brief gives the issue only cursory mention.[21] The superior court's order had the intended effect of validating CSED's termination of the grievant. Since the only dispute was just cause, the superior court did not err.

## IV. CONCLUSION

We AFFIRM the superior court's decision.

---

**19.** The seven tests, stated in question format, are: 1. Did the employer give to the employee forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct? 2. Was the employer's rule or managerial order reasonably related to (a) the orderly, efficient, and safe operation of the employer's business and (b) the performance that the employer might properly expect of the employee? 3. Did the employer, before administering discipline to an employee, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management? 4. Was the employer's investigation conducted fairly and objectively? 5. At the investigation did the "judge" obtain substantial evidence or proof that the employee was guilty as charged?

6. Has the employer applied its rules, orders, and penalties evenhandedly and without discrimination to all employees? 7. Was the degree of discipline administered by the employer in a particular case reasonably related to (a) the seriousness of the employee's proven offense and (b) the record of the employee in his service with the employer? *Enterprise Wire Co.*, 46 LA 356, 362 (1966).

**20.** *Wells v. State*, 46 P.3d 967, 970 n. 7 (Alaska 2002) (citation omitted).

**21.** *Petersen v. Mut. Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990) (holding claim given only cursory treatment in party's brief is waived).