**STATE of Alaska, Appellant,**

v.

**PUBLIC SAFETY EMPLOYEES ASSOCIATION, Appellee.**

No. S–13414.

Supreme Court of Alaska.

June 25, 2010.

---

William E. Milks, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for Appellant.

Stephen F. Sorensen, Simpson, Tillinghast & Sorensen, P.C., Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

An officer of the Airport Police and Fire Department of the Alaska Department of Transportation (the "Department") was discharged for gross abuse of alcohol, making inappropriate sexual remarks to two female officers, and alleged untruthfulness during a consequent internal investigation. The Public Safety Employees Association (PSEA), the labor organization that represents airport police and fire officers in labor-management relations, filed a grievance under its collective bargaining agreement with the State of Alaska, and the matter went to arbitration. The arbitrator concluded that the Department did not have just cause to discharge the officer (the "grievant") and ordered his reinstatement without back pay for the sixteen months since his discharge. The decision was affirmed by the superior court, and the State appeals.

The key to the resolution of this appeal is the level of deference we accord an arbitrator. The State and PSEA bargained for a binding arbitration process to resolve employee grievances concerning disciplinary actions, and we generally will not disturb its results, even where we would reach a different outcome were we to independently review the matter. Because the arbitrator is entitled to substantial deference in making his decision, and any possible sources of reversible error have been abandoned or waived by the State, we affirm the superior court and uphold the arbitration decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

The following facts are drawn from the arbitration decision and the opinion of the superior court and are not in dispute. The grievant had been employed as an officer with the Department for approximately four years when he was terminated on August 24, 2006. The termination was based on two events that occurred in May 2006 while the grievant was working at the Alaska Law Enforcement Academy in Sitka, Alaska and on the grievant's conduct during the subsequent investigation.

On May 5, 2006, the grievant and two other training officers went to a bar in Sitka, and the grievant became extremely intoxicated. While at the bar, the grievant slid toward a female officer on a couch and made inappropriate sexual remarks, telling her "that he wanted to make her come, that he could make her scream, [and] that he could push her buttons." The female officer told him to stop, but he repeated the comments several times. Because the grievant was too intoxicated to walk home that night, another officer drove him home. When they returned to the Academy, the grievant vomited outside and then, after the hallways were cleared of recruits, he was helped into an Academy building to a room where he could sleep. The grievant apologized to the female officer in person the following day and by email several days later. The grievant stated during the internal investigation and to the arbitrator that he does not remember making these inappropriate remarks to the female officer.

On the evening of May 17, 2006, the grievant stared at another female officer while they were watching television and later sent her unwelcome text messages in which he invited her to "go on a beer run," "go out and have fun," and join him in the room where training officers are allowed to sleep to "talk to him if she wanted." She told him to stop sending the messages, but he continued to do so. The following morning, the grievant sent the officer an email calling her his "sexy new friend," telling her she had "a great [a]ss" and "very nice tits," and stating that he wanted to see her nipple rings. The female officer wrote an email expressing her anger with his behavior, and the grievant subsequently sent her an email apology. The grievant testified at arbitration that he was up all night drinking prior to sending the email, a fact supported by the female officer's statement during the investigation that she

smelled alcohol on the grievant when she saw him that morning.

Following these events, another officer filed a complaint regarding the grievant's behavior.[1] Upon receiving the complaint, Lauri Burkmire, Chief of the Department, initiated an administrative inquiry, assigning a lieutenant to conduct witness interviews and a site visit. In his report, the lieutenant "concluded that Grievant's conduct violated . . . Department rules relating to unbecoming conduct, courtesy, sexual harassment, private conduct and truthfulness, immoral conduct (deception), and harassment" and identified "eight instances in which he felt Grievant had been less than truthful in the investigation."

After reviewing the report, Chief Burkmire sent the grievant a letter directing him to attend a meeting on August 18, 2006 to discuss "inconsistencies in your claims and your honesty regarding this matter." She reminded the grievant of his obligation to be honest and warned that failure to do so could result in his dismissal. The grievant attended the meeting with his representative from PSEA and, according to the arbitrator, admitted that he had not been honest in his interview with the lieutenant. At arbitration, the grievant testified that his dishonesty in his interview during the investigation was limited to downplaying the extent of his drinking. Chief Burkmire terminated the grievant several days after their meeting.

The grievant testified at arbitration that immediately following his termination, he enrolled in an outpatient alcoholic treatment program, which he successfully completed in eight months. At the time of his testimony before the arbitrator, he claimed he had been sober for fifteen months. He acknowledged that his remarks on May 5 and his email of May 18 were "inappropriate and rude," admitted that he had "failed to uphold the high standard of his profession," and stated that he was "very ashamed of his behavior."

### B. Proceedings

PSEA filed a grievance regarding the termination under its collective bargaining agreement and, as a final step, the matter went to arbitration. Arbitrator Harry Mac-Lean held three days of hearings in November 2007 and issued a final decision on January 7, 2008. He considered the following question: "Did the Department terminate Grievant for just cause? If not, what is the appropriate remedy?"

After defining "just cause," the arbitrator reviewed the reasons for the grievant's termination given in Chief Burkmire's letter: "(1) Grievant's gross and egregious misconduct, including gross misuse of alcohol; (2) Grievant's sexual harassment of the two female officers; and (3) Grievant's 'insincere and untruthful participation' in the investigation and review process." The arbitrator easily found that the evidence established the first offense, calling the grievant's behavior "totally contrary to [his] professional responsibility," "sexually offensive," and "as far over the line as one could imagine." The arbitrator next found that the Department could not establish that the grievant's conduct constituted either of the two recognized bases for stating a claim of sexual harassment against an employer—*quid pro quo* harassment and hostile work environment harassment. Lastly, the arbitrator found that although the Department did not establish that the grievant had lied, it did prove that he "was evasive, misleading and not forthcoming" in the investigatory process.

The arbitrator next considered whether the penalty of termination was commensurate with the proven misconduct, noting the inherent right of arbitrators "to review and modify penalties." He identified a number of mitigating factors in finding the penalty to be excessive: the grievant had worked for the Department for four years with no previous disciplinary incidents; employees who had committed similar infractions in the past, including being "less than truthful" in an internal investigation and engaging in "crude behavior at the bar," had not received as harsh a penalty; "something less than discharge" might have provided the grievant an opportunity to correct his behavior and based on the grievant's attitude at the arbitration hearing, the discipline had already had a "substantial corrective effect"; and the grievant's conduct occurred off-duty—in one in-

---

**1.** Neither of the female officers directly involved in the incidents filed a complaint.

stance off-site—and there was no evidence that the incidents had an effect on the Academy's reputation.

The arbitrator decided to order the Department to reinstate the grievant to his position, but "only by the slimmest margin," and concluded that the grievant was not entitled to any back pay. In effect, this decision reduced the grievant's penalty to a sixteen-month suspension. The State challenged the decision before the superior court, which granted summary judgment to PSEA. The State appeals.

## III. DISCUSSION

### A. Standard Of Review

▇▇▇ We review de novo the superior court's decision to confirm the arbitration award.[2] "Both the common law and Alaska statutes evince a strong public policy in favor of arbitration. In order to encourage parties to pursue arbitration, Alaska courts have a policy of minimizing their interference with arbitration decisions."[3] Thus, we give great deference to an arbitrator's decision, including findings of both fact and law.[4] We will only vacate an arbitration award arising out of a collective bargaining agreement where it is the result of gross error—those mistakes that are both obvious and significant.[5] We will not vacate such an award merely because we would reach a different decision ourselves.[6] This deferential standard is key to the decision we reach today.

### B. The State Did Not Show That The Arbitrator Committed Gross Error.

▇▇▇ The State argues that based on the arbitrator's findings of fact, it was gross error to order the grievant's reinstatement. In making its argument, the State relies on our decision in *Alaska State Employees Association/AFSCME Local 52 v. State* ("*ASEA*").[7] In *ASEA*, we affirmed a superior court order vacating an arbitration decision reinstating an administrative clerk employed by the Child Support Enforcement Division who had previously pleaded guilty to the felony of theft of public money.[8] In reaching our decision, we relied heavily on a personnel hiring rule providing that the State could refuse to examine or could disqualify applicants based solely on a felony conviction that bears on the performance of their potential duties.[9] Because the clerk had access to confidential information and held a position of trust, we concluded that her conviction for knowingly withholding child support and employment income information could justify her termination just as it could disqualify her as an applicant under the hiring rule.[10] In this case, the grievant has not been convicted of a felony and is not alleged to have engaged in felonious conduct. This personnel hiring rule is not applicable, and *ASEA* is thus not controlling.

▇▇▇ The State makes several specific allegations of gross error: that the arbitrator relied on an erroneous conclusion that "the Department has not consistently discharged employees for outright lying" in evaluating whether the grievant's punishment was excessive; that the arbitrator relied on factually distinct cases; and that the arbitrator erroneously found and relied on a conclusion that the grievant's conduct occurred off-site

2. *State v. Alaska Pub. Employees Ass'n*, 199 P.3d 1161, 1162 (Alaska 2008) (citing *Baseden v. State*, 174 P.3d 233, 237 (Alaska 2008)).

3. *Baseden*, 174 P.3d at 237 (internal citations and quotation marks omitted).

4. *See Alaska State Employees Ass'n/AFSCME Local 52 v. State*, 74 P.3d 881, 882–83 (Alaska 2003); *Butler v. Dunlap*, 931 P.2d 1036, 1038 (Alaska 1997).

5. *Alaska Pub. Employees Ass'n*, 199 P.3d at 1162–63 & n. 10; *Baseden*, 174 P.3d at 238. The standards for vacating an arbitration award set forth in Alaska's Arbitration Act, AS 09.43.120,

"do not apply to a labor-management contract unless they are incorporated into the contract by reference." AS 09.43.010; *see also Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 n. 5 (Alaska 1987).

6. *See Pub. Safety Employees Ass'n*, 732 P.2d at 1093.

7. 74 P.3d 881 (Alaska 2003).

8. *Id.* at 883–85.

9. *Id.* at 885.

10. *Id.* at 884–85.

or off-duty as a mitigating factor. In essence, however, the State is simply arguing that the arbitrator made the wrong decision—that the decision is so clearly wrong that it constitutes gross error. While we may disagree with the arbitrator's ruling, this is insufficient to justify reversing the decision given our deferential standard of review. In his opinion, the arbitrator found the grievant to have engaged in harassing conduct and to have been evasive and misleading during the investigation, but he also found there to be a number of mitigating factors that favored a lesser penalty. If we were reviewing this case in the first instance, or under a less deferential standard, we likely would not have reached this conclusion. But our standard for viewing an arbitrator's decision is very deferential: We review for gross error. And it was not gross error for the arbitrator to conclude that the Department did not have just cause to terminate the grievant and that a lesser but still severe penalty, a sixteen-month suspension without pay, was sufficient discipline.

### C. Other Claims Of Error

▮▮▮ We now turn to two additional arguments made by the State, one that it waived and one that it failed to preserve. The State correctly argued below that the arbitrator erred in concluding that the State had not established the charge of sexual harassment. In evaluating Chief Burkmire's stated grounds for terminating the grievant, the arbitrator interpreted the charge of "sexual harassment" to mean the *legal cause of action* for sexual harassment under Title VII of the Civil Rights Act of 1964.[11] But Chief Burkmire was clearly using the term "sexual

harassment" to refer to sexually harassing *conduct*. Employers, such as the Department, need not wait until sexually harassing conduct becomes so pervasive as to rise to the level of actionable sexual harassment under Title VII before taking disciplinary action; indeed, they have an affirmative duty to address such conduct before it rises to that level.[12] Where an arbitrator is reviewing a decision to discipline an employee for sexual harassment, the arbitrator should evaluate only whether the employer has established sexually harassing conduct. The arbitrator in this case erred in applying the wrong standard and in finding that the State had not established the charge of sexual harassment.

This error might have required a remand. However, the State failed to raise this argument on appeal and took the express position at oral argument that the arbitrator's error in failing to find sexual harassment was harmless. Counsel for the State maintained at oral argument that the arbitrator found "harassing conduct of a sexual nature" as part of his finding of "egregious misconduct." A member of the court asked counsel: "If [the arbitrator] took [sexual harassment] into account in connection with egregious behavior, then is it harmless error or even irrelevant that he went off on a tangent on whether there was sexual harassment in the workplace?" Counsel replied: *"Yes, your honor. That's our view."* (Emphasis added.) In light of this position and the State's failure to argue that the arbitrator's finding on sexual harassment requires us to vacate or remand the arbitration decision, we consider this argument to be waived.[13]

---

11. 42 U.S.C. § 2000e (2006). The arbitrator concluded that the grievant's conduct, while offensive, was not actionable as hostile work environment harassment under Title VII because it occurred off-duty and in one instance off-site and did not occur during the performance of the officers' duties; because no evidence was presented that it affected the female officers' ability to work as training officers or at their individual work stations; and because it "was not repetitive, continuous or ongoing" or "physically threatening," but rather "consisted of one incident with one officer and two incidents with another over a few days." We express no opinion as to this conclusion.

12. *See, e.g., Star v. West,* 237 F.3d 1036, 1038 (9th Cir.2001) ("Once an employer knows or should know of [coworker] harassment, a remedial obligation kicks in." (quoting *Fuller v. City of Oakland,* 47 F.3d 1522, 1528 (9th Cir.1995))).

13. *See Hidden Heights Assisted Living, Inc. v. State, Dep't of Health & Soc. Servs., Div. of Health Care Servs.,* 222 P.3d 258, 270 n. 60 (Alaska 2009) (holding an argument to be "waived for inadequate briefing and failure to raise the issue in the statement of points on appeal"); *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument

The State also argues, in this instance for the first time on appeal, that we should vacate the arbitrator's decision to reinstate the grievant on the grounds that the decision violates public policy. The State advocates adoption of a judicially created exception to enforcing arbitration decisions where doing so would violate an "explicit, well defined, and dominant" public policy.[14] The State contends that there exists in Alaska "an explicit, well-defined, and dominant public policy requiring that law enforcement officers be trustworthy and of high moral character" that was violated by the grievant's reinstatement.

Although this argument is compelling, the State did not raise it before the arbitrator or in any briefing or oral argument before the superior court. Accordingly, the superior court did not address the question of public policy. Although the State contends that it implicitly made a public policy argument to the superior court when it discussed *ASEA*, we disagree. In *ASEA*, we ruled that the arbitrator committed gross error in ruling that an employee's past felony conviction did not provide just cause for her termination;[15] here the State cited *ASEA* solely in the context of its gross error argument. While the State now argues that *ASEA* is best understood as an application of the public policy exception, it did not make this argument to the superior court. The superior court had no opportunity to review the State's proffered sources of public policy or to determine the contours of any public policy against reinstatement of dishonest officers, nor did it have an opportunity to consider whether any public policy was violated by the grievant's reinstatement. We decline to consider these issues for the first time on appeal and conclude that the State failed to preserve its public policy argument.[16]

## IV. CONCLUSION

For the reasons detailed above, we AFFIRM the superior court's grant of summary judgment confirming the arbitration decision.

---

portion of a brief, the point will not be considered on appeal.'').

**14.** *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17,* 531 U.S. 57, 62–63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (internal quotation marks and citation omitted) (declining to vacate under public policy exception an arbitration decision reinstating a truck driver who twice tested positive for marijuana).

**15.** 74 P.3d 881, 884–85 (Alaska 2003).

**16.** *See Askinuk Corp. v. Lower Yukon Sch. Dist.,* 214 P.3d 259, 266 (Alaska 2009) (citing *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.,* 32 P.3d 346, 355 (Alaska 2001)); *see also Baseden v. State,* 174 P.3d 233, 240 & n. 19 (Alaska 2008) (holding that an argument not raised before arbitrators was waived).