*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA POLICE STANDARDS COUNCIL, | ) ) ) | |
| | ) | Supreme Court No. S-15364 |
| Appellant, | ) ) | |
| | ) | Superior Court No. 1JU-12-00728 CI |
| v. | ) | |
| | ) | O P I N I O N |
| LANCE PARCELL, | ) ) | |
| | ) | No. 6999 – April 17, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Kathryn R. Vogel, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellant. Stephen F. Sorensen, Simpson, Tillinghast, Sorensen, & Sheehan, P.C., Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The level of deference we afford to an underlying decision often is key to the resolution of an appeal, and this case makes that point crystal clear. A police officer's employment was terminated for abuse of alcohol, sexually offensive remarks made to two female officers, and alleged dishonesty during the subsequent police

investigation. An arbitrator concluded that terminating the officer's employment was an excessive penalty and ordered the officer's reinstatement. The superior court affirmed the arbitration decision and we affirmed the superior court based on the deference that must be given to an arbitration decision. However, the Alaska Police Standards Council revoked the officer's police certificate after concluding that the officer was not of good moral character and was dishonest. The superior court reversed the decision to revoke, substituting its judgment for the Council's. But because the Council's decision, like that of the arbitrator, is entitled to deference, we reverse the superior court's decision and affirm the Council's decision to revoke the officer's police certificate.

## II.    FACTS AND PROCEEDINGS

This is the second time the underlying facts of this case have come before us. In 2006 the Airport Police and Fire Department of the Alaska Department of Transportation terminated Lance Parcell's employment for harassing conduct and evasiveness during the Department's subsequent review. In *State v. Public Safety Employees Ass'n* (*PSEA 2010*)[1] we affirmed a superior court decision refusing to vacate a labor arbitrator's decision to reinstate Parcell.[2]

The Alaska Police Standards Council subsequently revoked Parcell's police certificate, but the superior court on appeal reversed the Council's decision. The Council now appeals from the superior court's decision.

In *PSEA 2010* we introduced most of the relevant factual background:

[Parcell] had been employed as an officer with the Department for approximately four years when he was terminated on August 24, 2006. The termination was based on two events that occurred in May 2006 while [Parcell] was

---

[1]    235 P.3d 197(Alaska 2010).

[2]    *Id.* at 203.

working at the Alaska Law Enforcement Academy in Sitka, Alaska and on [Parcell's] conduct during the subsequent investigation.

On May 5, 2006, [Parcell] and two other training officers went to a bar in Sitka, and [Parcell] became extremely intoxicated. While at the bar, [Parcell] slid toward a female officer on a couch and made inappropriate sexual remarks, telling her "that he wanted to make her come, that he could make her scream, [and] that he could push her buttons." The female officer told him to stop, but he repeated the comments several times. Because [Parcell] was too intoxicated to walk home that night, another officer drove him home. When they returned to the Academy, [Parcell] vomited outside and then, after the hallways were cleared of recruits, he was helped into an Academy building to a room where he could sleep. [Parcell] apologized to the female officer in person the following day and by email several days later. [Parcell] stated during the internal investigation and to the arbitrator that he does not remember making these inappropriate remarks to the female officer.

On the evening of May 17, 2006, [Parcell] stared at another female officer while they were watching television and later sent her unwelcome text messages in which he invited her to "go on a beer run," "go out and have fun," and join him in the room where training officers are allowed to sleep to "talk to him if she wanted." She told him to stop sending the messages, but he continued to do so. The following morning, [Parcell] sent the officer an email calling her his "sexy new friend," telling her she had "a great [a]ss" and "very nice tits," and stating that he wanted to see her nipple rings. The female officer wrote an email expressing her anger with his behavior, and [Parcell] subsequently sent her an email apology. [Parcell] testified at arbitration that he was up all night drinking prior to sending the email, a fact supported by the female officer's statement during the investigation that she smelled alcohol on [Parcell] when she saw him that morning.

Following these events, another officer filed a complaint regarding [Parcell's] behavior. Upon receiving the complaint, Lauri Burkmire, Chief of the Department, initiated an administrative inquiry, assigning a lieutenant to conduct witness interviews and a site visit. In his report, the lieutenant "concluded that [Parcell's] conduct violated . . . Department rules relating to unbecoming conduct, courtesy, sexual harassment, private conduct and truthfulness, immoral conduct (deception), and harassment" and identified "eight instances in which he felt [Parcell] had been less than truthful in the investigation."

After reviewing the report, Chief Burkmire sent [Parcell] a letter directing him to attend a meeting on August 18, 2006 to discuss "inconsistencies in your claims and your honesty regarding this matter." She reminded [Parcell] of his obligation to be honest and warned that failure to do so could result in his dismissal. [Parcell] attended the meeting with his representative from [the Public Safety Employees Association] and, according to the arbitrator, admitted that he had not been honest in his interview with the lieutenant. At arbitration, [Parcell] testified that his dishonesty in his interview during the investigation was limited to downplaying the extent of his drinking. Chief Burkmire terminated [Parcell] several days after their meeting.

[Parcell] testified at arbitration that immediately following his termination, he enrolled in an outpatient alcoholic treatment program, which he successfully completed in eight months. At the time of his testimony before the arbitrator, he claimed he had been sober for fifteen months. He acknowledged that his remarks on May 5 and his email of May 18 were "inappropriate and rude," admitted that he had "failed to uphold the high standard of his profession," and stated that he was "very ashamed of his behavior."[3]

_____

**3**    *Id.* at 199-200 (internal footnote omitted).

The parties in this case stipulated to these facts and they are quoted verbatim in the Council's decision.

After the Department terminated Parcell the Public Safety Employees Association filed a grievance on his behalf, and the matter eventually went to arbitration.[4] The arbitrator found, in relevant part, that: (1) Parcell's behavior was "totally contrary to [his] professional responsibility," "sexually offensive," and "as far over the line as one could imagine"; and (2) "although the Department did not establish that [Parcell] had lied, it did prove that he 'was evasive, misleading and not forthcoming' in the investigatory process."[5] By only "the slimmest margin" the arbitrator found that Parcell should be reinstated. The Department then moved in the superior court to vacate the arbitration decision, but the superior court denied the Department's request.

The Department appealed to this court and in *PSEA 2010* we affirmed the superior court's decision, noting the "deferential standard" afforded arbitration decisions, which was "key to the decision we reach[ed]."[6] And we explained that "[i]f we were reviewing this case in the first instance, or under a less deferential standard, we likely would not have reached this conclusion."[7]

While Parcell's employment matter was progressing, the Alaska Police Standards Council independently sought to revoke Parcell's police certificate. The revocation proceedings were stayed pending resolution of the employment matter, but after our *PSEA 2010* decision the Council served Parcell with its "Third Amended Accusation" and resumed the revocation proceedings. The thrust of the Council's

---

[4]     *Id.* at 200.

[5]     *Id.* (alteration in original).

[6]     *Id.* at 201.

[7]     *Id.* at 202.

position was that because Parcell lacked good moral character and was dishonest, revocation of Parcell's certificate was appropriate.

A hearing officer was appointed, but Parcell and the Council agreed that an evidentiary hearing was unnecessary and stipulated to the facts noted in our *PSEA 2010* decision. The hearing officer found that the Council did not meet its burden in proving that: (1) Parcell had been discharged for cause;[8] or (2) Parcell is not a person of good moral character.[9] The hearing officer therefore concluded that revocation of Parcell's police certificate was unwarranted, stating that "[p]er the stipulation of the parties, Parcell's conduct was egregious, rude, and grossly offensive" but not sufficient to establish a lack of good moral character.

The Council disagreed with the hearing officer's proposed decision and pursued revocation.[10] Parcell provided the Council additional evidence to establish his good moral character. The Council issued a written decision evaluating whether Parcell: (1) had been terminated for conduct that "would cause a reasonable person to have substantial doubt about [his] honesty, fairness, and respect for the rights of others and for

---

[8]    *See* 13 Alaska Administrative Code (AAC) 85.110(b)(3) (2014) (requiring revocation when an officer "has been discharged . . . from employment as a police officer in this state or any other state or territory for cause for conduct that would cause a reasonable person to have substantial doubt about an individual's honesty, fairness, and respect for the rights of others").

[9]    *See* 13 AAC 85.110(a)(3) (providing for discretionary discharge when an officer "does not meet the standards in 13 AAC 85.010(a) or (b)"); 13 AAC 85.010(a)(3) (requiring that a person hired as a police officer "is of good moral character").

[10]    AS 44.62.500 allows agencies to adopt hearing officer decisions, but an agency is not required to adopt a hearing officer's decision and "may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same or another hearing officer to take additional evidence."

the laws of this state";[11] and (2) is not of "good moral character."[12]  In addition to the evidence of Parcell's inappropriate sexually offensive remarks, the Council considered the evidence that he had been dishonest during the department's subsequent investigation, stating:

> Parcell "was evasive, misleading, and not forthcoming". . . [and t]he agreed upon facts, the arbitrator decision, superior court order, and Supreme Court opinion leave no room to debate that [the Department chief and investigating officer] are of the opinion that Parcell was dishonest in eight specific instances during the administrative investigation.  Parcell's engaging [in] the dishonest behavior renders him unable to effectively perform the duties of a law enforcement officer in connection with making applications to the court — including search and arrest warrant applications, and court testimony.

The Council concluded that Parcell "is not a person the citizens of our great State of Alaska can entrust with private personal information, the lives and safety of themselves and their loved ones, and be counted on to do the right things for the right reasons" and that his "dishonesty significantly and substantially impairs his ability to perform the responsibilities of a law enforcement officer."  The Council revoked Parcell's certificate.  Parcell appealed to the superior court.

The superior court concluded that the Council's moral character determination was not entitled to deference because good moral character "is a standard eligibility requirement in professions serving the public" so its meaning "is not one

---

[11]     13 AAC 85.110(b)(3).

[12]     13 AAC 85.110(a)(3) ("The council will, in its discretion, revoke a . . . certificate upon a finding that the holder . . . does not meet the standards in 13 AAC 85.010(a) or (b)."); 13 AAC 85.010(a)(3) ("A participating police department may not hire a person as a police officer unless the person . . . is of good moral character.").

unique to the Council." The court agreed with the hearing officer's statement that a person lacking good moral character has character flaws "that are ingrained, lasting, or causing consistent behavioral or decision making problems." The court then summarized various certificate-revocation decisions from other jurisdictions involving police officers who had behaved more egregiously than Parcell. It faulted the Council for not considering the good aspects of Parcell's character, including his employment for four years before the May 2006 incidents, his maintaining sobriety since the incidents, and that he "was actively engaged in the community, and had the support of his local [r]abbi." Finally, the court concluded that the Council's interpretation of "good moral character" was unreasonable.

The superior court also reviewed the Council's finding that Parcell had been dishonest. The court concluded that the finding was not supported by substantial evidence and disagreed that Parcell's conduct "would be considered exculpatory information in cases in which he is involved, such that the arbitrator's findings would preclude Parcell from performing his duties as a police officer."

The Council appeals.

## III.  STANDARD OF REVIEW

"Where the superior court is acting as an intermediate court of appeals, we directly review the agency decision. Questions of fact are reviewed for substantial evidence. Questions of law involving agency expertise are reviewed using the reasonable [or rational] basis test . . . ."[13]  We have explained that:

> [T]wo circumstances generally call for rational basis review:
> (1) "where the agency is making law by creating standards to

---

[13]    *West v. Municipality of Anchorage*, 174 P.3d 224, 226 (Alaska 2007) (internal footnotes omitted) (citing *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1253 (Alaska 2007); *State v. Pub. Safety Emps. Ass'n*, 3 P.3d 409, 413 (Alaska 2004)).

be used in evaluating the case before it and future cases," and (2) "when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the fact's underlying the agency's decision."[14]

"Where questions of law do not involve agency expertise, the appropriate standard of review is 'substitution of judgment . . . .' "[15] "We review an agency's application of its own regulations for whether the agency's decision was 'arbitrary, unreasonable, or an abuse of discretion.' "[16]

## IV. DISCUSSION

### A. It Was Error To Apply The Substitution Of Judgment Standard To The Council's Decision On Good Moral Character.

Noting the "primary public interest that applicants meet minimum standards for employment as police officers"[17] the legislature created the Alaska Police Standards Council.[18] The Council may "establish minimum standards for employment as a police officer"[19] and the Council may establish mandatory qualifications for police officers "including minimum age, education, physical and mental standards, *moral character*,

---

[14] *W. States Fire Protection Co. v. Municipality of Anchorage*, 146 P.3d 986, 989 (Alaska 2006) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[15] *Alaska Exch. Carriers Ass'n v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 460 (Alaska 2009) (quoting *Tesoro Alaska Petroleum Co.*, 746 P.2d at 903).

[16] *Id.* at 461 (quoting *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007)).

[17] AS 18.65.130.

[18] AS 18.65.140.

[19] AS 18.65.220.

and experience."[20] If an applicant satisfies the Council's mandatory qualifications, then "[t]he [C]ouncil shall issue a certificate evidencing satisfaction of the requirements."[21] But if a police officer fails to continue to satisfy the Council's standards, the Council may revoke the officer's certificate.[22]

The Council has adopted regulations establishing grounds for mandatory revocation[23] and grounds for discretionary revocation.[24] The Council may in its discretion revoke an officer's certificate if the officer is not "of good moral character."[25] In its regulations the Council has defined good moral character as:

> the absence of acts or conduct that would cause a reasonable person to have substantial doubts about an individual's honesty, fairness, and respect for the rights of others and for the laws of this state and the United States; for purposes of this standard, a determination of lack of "good moral

---

[20] AS 18.65.240(a) (emphasis added).

[21] AS 18.65.240(b).

[22] AS 18.65.240(c).

[23] 13 AAC 85.110(b) (requiring revocation for conviction of a felony, conviction of specific misdemeanors, use, possession, or sale of controlled substances, and "discharge[] . . . as a police officer . . . for conduct that would cause a reasonable person to have substantial doubt about an individual's honesty, fairness, and respect for the rights of others and for the laws of this state").

[24] 13 AAC 85.110(a) (granting the Council discretion to revoke a certificate for falsification or omissions in a certificate application, for discharge or resignation under threat of discharge for reasons that adversely affect the officer's ability to perform duties, and for failure to meet the basic standards for police officers).

[25] *See* 13 AAC 85.110(a)(3) (providing for discretionary revocation when an officer "does not meet the standards in 13 AAC 85.010(a) or (b)"); 13 AAC 85.010(a)(3) (explaining that a department may not hire a person as an officer unless the person "is of good moral character").

character" may be based upon all aspects of a person's character . . . .[26]

We must determine the amount of deference owed to the Council's application of its regulations. The Council's Third Amended Accusation included two counts for revocation: (1) mandatory revocation under 13 AAC 85.110(b)(3) — due to Parcell's discharge from the Department; and (2) discretionary revocation under 13 AAC 85.110(a)(3) — due to Parcell's lack of good moral character. In its Final Decision the Council concluded that discretionary revocation was appropriate because Parcell was not of good moral character.[27]

The superior court concluded that the Council's moral character determination was not entitled to deference because moral character "is a standard eligibility requirement in professions serving the public" and "not one that requires the Council's specialized knowledge or technical expertise." The superior court further noted that "courts frequently consider character" and that "while the Council may be

---

[26]     13 AAC 85.900(7).

[27]     The Council also concluded that mandatory revocation was appropriate because Parcell was:

> discharged from employment as a police officer "for conduct that would cause a reasonable person to have substantial doubt about an individual's honesty, fairness, and respect forth [sic] rights of others and for the laws of this state and the United States or that is detrimental to the integrity of the police department where the police officer worked . . . ."

The superior court held that the Council waived mandatory revocation and that our decision in *PSEA 2010*, affirming the arbitrator's decision that Parcell not be discharged for cause, precludes revocation under 13 AAC 85.110(b)(3). Parcell briefed this decision, but the Council limited its appeal to discretionary revocation. We therefore do not address the court's decision on mandatory revocation under 13 AAC 85.110(b)(3).

experienced in determining good moral character, that determination does not inherently call for the Council's expertise." Substituting its judgment for the Council's, the court concluded that "[t]he term 'lacking in moral character' should then generally refer to flaws in one's character that are engrained, lasting or causing consistent behavioral or decision making problems."

Substitution of judgment is not the proper standard of review in this case. The Council correctly argues that the revocation decision based on the determination that Parcell lacked good moral character was a policy determination involving agency expertise, properly reviewed for a rational or reasonable basis. "The rational basis test may be appropriate even when interpreting commonly used words, if there are technical and policy reasons to defer to the administrative agency, and especially if the legislature has granted the agency broad discretion."[28]

The legislature created the Council to "establish minimum standards for employment as a police officer."[29] And the legislature gave the Council discretion when making revocation decisions.[30] We therefore defer to the Council's reasonable interpretation and application of its regulations.

## B. The Council Reasonably Determined That Parcell Was Not Of Good Moral Character.

Relying on the facts that Parcell was "a person who engaged in behavior 'totally contrary to his professional responsibility,' 'sexually offensive,' and 'as far over the line as one could imagine' " and that Parcell was " 'evasive, misleading and not

---

[28] *W. States Fire Protection Co. v. Municipality of Anchorage*, 146 P.3d 986, 989 (Alaska 2006).

[29] AS 18.65.220.

[30] *See* AS 18.65.240(c) ("The council may deny or revoke the certificate of a police officer who does not meet the standards adopted under (a)(2) of this section.").

forthcoming' in the investigatory process" the Council determined that Parcell was not of good moral character.[31]

Parcell argues that "there must be a pattern of behavior to show the lack of good moral character and not one isolated incident." In support of his argument Parcell cites cases from other jurisdictions,[32] but he fails to point to any precedent or clear statement establishing that this is the law in Alaska. We are not persuaded that a single transgression or incident of misconduct, no matter how egregious, never will be sufficient to support a reasonable determination that a police officer is not of good moral character. And in this case the Council relied on two separate incidents, as well as Parcell's evasive behavior during the subsequent investigation.

Parcell echoes the superior court's notation of "the Council's apparent failure to consider 'all aspects' of Parcell's character as permitted by the definition of good moral character under 13 AAC 85.900(7)." In order to show his good moral character Parcell submitted evidence to the Council that he had completed alcohol treatment and maintained his sobriety, was actively involved in his community, and that he received his local rabbi's support. The Council's decision did not explicitly mention

---

[31] The Council also determined that Parcell's evasive behavior during the Department's investigation would be subject to a mandatory *Brady* disclosure and that this would limit Parcell's ability to effectively perform his duties as a police officer. *See Brady v. Maryland*, 373 U.S. 83, 86-88 (1963) (requiring disclosure of exculpatory information); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the] general [*Brady*] rule." (quoting *Nupue v. Illinois*, 360 U.S. 264, 269 (1959)) (internal quotation marks omitted)). We do not address the *Brady* issue because it is not necessary for our resolution of this case.

[32] *See, e.g., Albert v. Fla. Dep't of Law Enforcement, Criminal Justice Standards & Training Comm'n*, 573 So.2d 187 (Fla. Dist. App. 1991); *Cuff v. Dep't of Pub. Safety Standards & Training*, 198 P.3d 931 (Or. 2008).

this evidence of Parcell's character, but that does not mean the Council did not consider it[33] — the Council had no obligation to list all aspects of Parcell's character in its decision. Even if the Council's decision could have said more, our review is limited to determining whether the Council's decision was reasonable.

Parcell finally argues that in his employment case the arbitrator and this court "did not conclude th[at] Parcell was dishonest" and that we have previously held that Alaska "does not have [an] explicit, well-defined and dominant public policy that requires police officers to be completely honest."[34] Parcell correctly notes that in his employment case the arbitrator concluded that Parcell's "conduct fell short of lying," but the arbitrator's findings that Parcell admitted lying on one occasion and that Parcell was evasive during the subsequent investigation support the Council's conclusion that Parcell was dishonest. And the fact that there is no legal requirement to terminate a police officer's employment for minor acts of dishonesty does not limit the Council's discretion to revoke that officer's certification.

The stipulated facts establish that Parcell's harassing conduct was beyond offensive and inappropriate and that Parcell then was evasive during the Department's review. The Council concluded, based on these specific facts, that Parcell did not have the moral character required of a police officer in Alaska. There is no evidence in the record that the Council considered inappropriate facts or failed to consider relevant facts.

---

[33]    *See* 13 AAC 85.900(7) ("[A] determination of lack of 'good moral character' may be based upon a consideration of all aspects of a person's character.").

[34]    *See State v. Pub. Safety Emps. Ass'n* (*PSEA 2011*), 257 P.3d 151, 161 (Alaska 2011) ("While Alaska's laws are *explicit* in favoring an honest police force, they are not explicit in requiring a policy of absolute zero tolerance toward any dishonest by law enforcement officials, no matter how minor." (Emphasis in original.)).

In *PSEA 2010*, when ultimately affirming the arbitrator's decision to reverse Parcell's termination, we expressly noted that "[i]f we were reviewing this case in the first instance, or under a less deferential standard, we likely would not have reached this conclusion."[35] The Council was reviewing the case in the first instance and came to a different conclusion than the arbitrator in the employment case, and here we again review the decision under a deferential standard of review. We conclude that the Council's revocation decision was reasonable.

## V.  CONCLUSION

The judgment of the superior court is REVERSED and the Council's revocation of Parcell's police certificate is AFFIRMED.

---

[35]    235 P.3d 197, 202 (Alaska 2010).