**Paul FROST, Laura Frost, and Annie Fox, Appellants,**

v.

**Moses AYOJIAK, Appellee.**

**No. S–7781.**

Supreme Court of Alaska.

May 8, 1998.

David S. Case, Copeland, Landye, Bennett and Wolf, LLP, Anchorage, for Appellants.

David D. Clark, Law Office of David D. Clark, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

Paul Frost, Laura Frost, and Annie Fox (the Frosts) appeal the superior court's order denying their Alaska Civil Rule 60(b) motion and granting Moses Ayojiak's Civil Rule 60(a) motion. We conclude that the superior court erred in holding that ejecting the Frosts from Lot 3, rather than Lot 3B, was a "clerical error" and in holding that Ayojiak had had standing to eject them from Lot 3B when he brought his ejectment action. The errors committed by the superior court were not harmless. We reverse the order ejecting the Frosts from Lot 3B and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

In 1982 the City of Togiak deeded to Moses Ayojiak Lot 3, Block 10, USS 4905 (Lot 3). Ayojiak built a house on property he

thought was a part of Lot 3. In 1985 Ayojiak sold the house, but not the land, to John Coopchiak for $15,000. In 1986 Coopchiak sold the house to Annie Fox and Roy Fox.[1] After Roy Fox died, Laura Frost, Annie and Roy's granddaughter, and her husband Paul Frost moved into the house with Annie. Ayojiak demanded that the Frosts move the house off his property. When the Frosts refused, Ayojiak brought an action against the Frosts to eject them from Lot 3 and to quiet title to Lot 3. The Frosts cross-complained, claiming title by adverse possession on a color-of-title theory.

In January 1996 the superior court entered a final judgment against the Frosts, ejecting them from Lot 3 and ordering them to pay back rent to Ayojiak. The court found that the Frosts had not shown colorable title by clear and convincing evidence. It further found that the Frosts had not brought their adverse possession claim in good faith. The court opined that the Frosts had coached witnesses and changed dates on checks to support their version of the facts and that they "[had taken] advantage of [Coopchiak] and fabricated evidence of title."

During the time that Paul Frost was preparing to move the house off Lot 3, he discovered a survey cap on the property. After some investigation, Frost learned that a 1988 survey had resulted in the recording of Plat 90–5. Plat 90–5 shows that Lot 3 no longer exists. The City had re-platted Lot 3 into three parcels—a city street, Lot 3A, and part of Lot 3B.[2] Lot 3B extends beyond some of the original boundaries of Lot 3. According to Plat 90–5, the Frosts' house sits on Lot 3B. The Frosts' house is not located on any part of the land previously identified as Lot 3. Plat 90–5 was recorded on April 12, 1990. It lists the City of Togiak and/or Togiak Natives, Limited, as the record title holder(s) of Lot 3A and Lot 3B.

On February 15, 1996, the Frosts moved for relief from the final judgment pursuant to Rule 60(b). On March 15 the City issued a warranty deed to Ayojiak, deeding him Lot 3A and Lot 3B.[3] Ayojiak opposed the Frosts' Rule 60(b) motion and moved to amend the judgment pursuant to Rule 60(a). The superior court denied the Frosts' Rule 60(b) motion and granted Ayojiak's Rule 60(a) motion, thereby implicitly finding that the judgment's reference to Lot 3 was a "clerical error." The court amended the final judgment to eject the Frosts from Lot 3B. This appeal followed.

## III. DISCUSSION

### A. Standard of Review

 Whether an error is a "clerical error" within the meaning of Rule 60(a) is a question of law. See DeVaney v. State, Dep't of Revenue, 928 P.2d 1198, 1200 (Alaska 1996). We review questions of law de novo. See Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). If the error was a "clerical error," we review the trial court's decision to amend the judgment under Rule 60(a) for an abuse of discretion. See Alaskan Village, Inc. v. Smalley, 720 P.2d 945, 950 (Alaska 1986).

 We review an order denying a Rule 60(b) motion to determine if the trial court abused its discretion. See Benedict v. Key Bank of Alaska, 916 P.2d 489, 491 (Alaska 1996); McCall v. Coats, 777 P.2d 655, 657 (Alaska 1989). Reversal of the trial court "is justified only if this court concludes the trial court was clearly mistaken." Grothe v. Olafson, 659 P.2d 602, 611 (Alaska 1983).

### B. This Court Will Not Address Whether the Amended Judgment Was Entered in Violation of Rule 54(c).

 On appeal, the Frosts contend for the first time that, pursuant to Civil Rule 54(c),[4] the final judgment cannot be amend-

---

1. At trial, the Frosts alleged that Coopchiak sold the house to Laura Frost in 1987. The trial court found that the evidence did not support that assertion. Rather, the court found that Coopchiak sold the house to the Foxes in 1986.

2. See Appendix A, showing the relevant portion of Plat 90–5 indicating the boundaries of Lot 3, Lot 3A, and Lot 3B.

3. The warranty deed was signed by the mayor of Togiak.

4. Rule 54(c) provides:

 A default judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a default judgment is en-

ed. We do not consider arguments attacking a judgment unless they were raised below. *See Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985) ("As a general rule, a party may not present new issues or advance new theories to secure a reversal of a lower court decision."). The Frosts argue that their Rule 54(c) argument is properly before us because it is either "an additional theory supporting their argument that the trial court abused its discretion in granting Ayojiak's Motion to Amend the Judgment.... [Or] it is allowable because it closely relates to the arguments presented to the trial court." We conclude that the Frosts did not adequately raise their Rule 54(c) argument in the superior court. An argument that an amended final judgment violates Rule 54(c) is not so closely related to a Rule 60(b) motion that it "could have been gleaned from [the Frosts'] pleadings." *Id.* at 1280.

### C. *The Misidentification of a Parcel of Real Property Is Not a "Clerical Error" within the Meaning of Rule 60(a).*

The superior court amended the final judgment pursuant to Rule 60(a), which provides in part:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

The "clerical error" on which Ayojiak based his motion to amend was the ejectment of the Frosts from Lot 3, from which Ayojiak had sued to eject the Frosts, instead of from Lot 3B, where the house actually sits. The superior court stated in its decision that "[i]t is undisputed that at all relevant times [Ayojiak] has been the record owner of the land in

question." This is not supported by the record. According to Plat 90–5, the house was never located on Lot 3.[5] Before the 1988 replatting, the City owned the land on which the Frosts' house sits. After the 1988 replatting, the City continued to own the land on which the house sits, which was then called Lot 3B. The City owned Lot 3B until it deeded the lot to Ayojiak in March 1996, *after* the superior court's final judgment. The City, not Ayojiak, was thus the record owner of Lot 3B at the time Ayojiak brought his ejectment action. Upon discovering that it had defectively recorded the replatting of Lot 3, the City re-recorded Plat 90–5 and deeded Ayojiak Lot 3A and Lot 3B. The superior court simply issued an amended final judgment substituting "Lot 3B" for "Lot 3" and ejecting the Frosts therefrom.[6]

The Frosts raise several challenges to the superior court's order amending the final judgment. They contend that ejecting them from Lot 3 instead of Lot 3B was not a "clerical error." Even if it was a clerical error, the Frosts argue that Ayojiak did not have standing to eject them from Lot 3B when he brought the ejectment action, because he had never held legal title to Lot 3B and the house had never been located on the lot to which Ayojiak did hold legal title, i.e., Lot 3. Therefore, the superior court abused its discretion in granting Ayojiak's motion to amend.

The Frosts argue that the superior court's amendment of the judgment to eject them from Lot 3B, instead of Lot 3, was not merely correcting a "clerical error." Rather, the court substantively altered the judgment in a way not intended by Rule 60(a). The Frosts support their argument with the fact that their house was never located on the land from which the original judgment ejected them. The superior court, the Frosts contend, ejected them from property to

---

tered, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the pleadings.

**5.** As stated above, the 1988 replatting, which revealed that the house never sat on Lot 3, also eliminated Lot 3.

**6.** The superior court's Amended Final Judgment awarded the same amount of money damages to Ayojiak as its original final judgment. The court awarded Ayojiak $8,000 (rent owed from September 1, 1992, to present), with interest at 10.5 percent per annum from and after September 21, 1994, and attorney's fees.

which Ayojiak only became the legal title holder after the final judgment was entered.

Ayojiak argues that his title to Lot 3B is derivative of his title to Lot 3, and that to correct the final judgment to reflect that the house sits on Lot 3B was to correct a clerical error within the meaning of Rule 60(a). Ayojiak relies on *State v. 7.536 Acres,* 431 P.2d 897 (Alaska 1967). In *7.536 Acres,* the land totaled 9.942 acres, but was wrongly described as 7.536 acres. *Id.* at 901. We stated that it was "probable ... that the slight variance in acreage ... results from a clerical error. Such an error is not fatal to the validity of the judgment and may be corrected by the trial court upon remand." *Id.* It was not contended that the boundaries of the 9.942 acres were different than the boundaries of the land erroneously described as containing 7.536 acres.

█ We conclude that ejecting the Frosts from Lot 3, instead of Lot 3B, was not a "clerical error" within the meaning of Rule 60(a). *7.536 Acres* is distinguishable. In the instant case, the superior court was not amending the final judgment to reflect a correction in the description of the amount of property Ayojiak owned, or a correction in the description of the identity of the property Ayojiak owned. Plat 90–5 reveals that the Frosts' house never sat on Lot 3, and that Ayojiak had never owned the property on which the house does sit until the City deeded it to him in March 1996, two months after the original final judgment.

The discovery of Plat 90–5 reveals that the original final judgment was incorrect in several ways: (1) Lot 3 no longer existed; (2) the Frosts' house never sat on Lot 3; and (3) the Frosts' house did not sit on property owned by Ayojiak at the time he brought the ejectment action. These defects in the final judgment are not mere "clerical errors."

In support of his contention that substituting Lot 3B for Lot 3 was nonetheless a correct remedy, Ayojiak argues that any future litigation would merely repeat the previous trial because "[t]he [first] litigation was over who owned the land the house sat on, Moses Ayojiak or the Frosts." It is because the litigation only concerned whether Ayojiak or the Frosts owned the land on which the

house sat, and Plat 90–5 reveals that neither owned the land, that amending the final judgment substantively changed that judgment, a remedy not contemplated by Rule 60(a). *See* 12 James Wm. Moore, *Moore's Federal Practice* § 60.11[3] (3d ed.1997) (stating that a judgment should be amended pursuant to Rule 60(a) only to correct mindless mechanical mistakes, but may not be used for the purpose of making rulings that should have been made and were not).

### D. *The Denial of the Frosts' Rule 60(b) Motion Was an Abuse of Discretion.*

The Frosts appeal the superior court's order denying Civil Rule 60(b) relief, alleging that relief was warranted under subsections (1), (2), (5), and (6) of the rule. In *Babinec v. Yabuki,* 799 P.2d 1325 (Alaska 1990), we set out the requirements for obtaining relief pursuant to Rule 60(b)(2) (newly discovered evidence). We stated:

The newly discovered evidence must:

(1) be such as would probably change the result on a new trial;

(2) have been discovered since the trial;

(3) be of such a nature that it could not have been discovered before trial by due diligence;

(4) be material; [and]

(5) not be merely cumulative or impeaching.

*Id.* at 1333.

The Frosts argue that the discovery of Plat 90–5 meets the *Babinec* requirements for obtaining Rule 60(b)(2) relief. Ayojiak, however, asserts that the newly discovered Plat 90–5 would not change the end result of the litigation; i.e., ejecting the Frosts from the land upon which the house sits. Also, Ayojiak argues, the Frosts failed to show the existence of a meritorious defense to his ejectment action, as required to obtain Rule 60(b) relief. *See Cleary Diving Serv. v. Thomas Head & Greisen,* 688 P.2d 940, 943 (Alaska 1984) (stating that "in order to prevail on a 60(b) motion, a movant must generally show the existence of a meritorious claim as well as one of the grounds stated in the rule, such as excusable neglect or mistake").

■ Plat 90–5 meets the *Babinec* requirements for obtaining relief under Rule 60(b)(2). First, Plat 90–5 would change the result of a new trial. The court ordered the Frosts to pay back rent to Ayojiak beginning from September 1, 1992, when the Frosts permanently moved into the house. Although the City deeded Ayojiak the land on which the Frosts' house sits in 1996, from 1992 until 1996 the house sat on property owned by the City, not Ayojiak. While a new trial may result in ejecting the Frosts from Lot 3B, to which Ayojiak now seemingly holds legal title,[7] a new trial might not result in ordering the Frosts to pay back rent to Ayojiak from 1992. Second, Plat 90–5 was discovered since the trial. Third, although Plat 90–5 had been recorded since 1990, the Frosts had no reason to doubt that Ayojiak was the record owner of the land on which the house sat. The Frosts bought the house from Coopchiak, who had bought the house from Ayojiak. The Frosts had not had any reason to believe that Ayojiak had sold a house on property that he did not legally own. Fourth, Plat 90–5 is material to the litigation. As discussed above, Plat 90–5 reveals not only that Lot 3 no longer exists, but that the Frosts' house never sat on Lot 3; rather, the house sits on land owned by the City until it was deeded to Ayojiak in 1996. Lastly, Plat 90–5 is neither cumulative nor impeaching.

■ Ayojiak's argument that the Frosts did not assert a meritorious defense is incorrect. The Frosts' argument that their house was not sitting on Ayojiak's property when he brought the ejectment action is a meritorious defense to an ejectment action.

We conclude that the superior court abused its discretion in denying the Frosts' Rule 60(b)(2) motion. Given our holding un-

der Rule 60(b)(2), we need not address Frosts' arguments regarding other subsections of the rule.

## E. *The Errors Were Not Harmless.*

■ Since Ayojiak currently holds apparent legal title to Lot 3B, the superior court's errors are seemingly harmless. Legal ownership gives Ayojiak the right to bring an ejectment action against the Frosts pursuant to AS 09.45.630, and he would likely prevail.

Before Ayojiak was deeded Lot 3B in 1996, the Frosts' house sat on property owned by the City. The Frosts' adverse possession defense to Ayojiak's ejectment action could not have been a defense to such an action by the City. The Frosts cannot adversely possess City property. *See* AS 29.71.010 ("A municipality may not be divested of title to real property by adverse possession."). While the City, and not Ayojiak, was the proper plaintiff to have brought the ejectment action against the Frosts in 1994, Ayojiak may now be entitled to eject the Frosts from Lot 3B. Arguably the Frosts will not be prejudiced by being ejected from Lot 3B without another trial. However, further inquiry reveals that the superior court must address certain issues on remand before it can allow Ayojiak to eject the Frosts from Lot 3B.

The Frosts argue that they deserve a chance to raise a defense to an ejectment action from Lot 3B that they did not raise in the Lot 3 ejectment action. The Frosts' additional argument is that the City's actions in deeding Lot 3A and Lot 3B to Ayojiak were illegitimate.[8] The Frosts argue that the "1996 deed from the Togiak mayor is invalid," because evidence of the alleged 1988 oral agreement [9] is unreliable and because the mayor lacked the authority to unilaterally

---

**7.** *But see* discussion *infra* Part III.E of the issues surrounding the legitimacy of Ayojiak's warranty deed to Lot 3B.

**8.** The Frosts first disputed Ayojiak's ownership of Lot 3B in their Reply to Ayojiak's Opposition to their Rule 60(b) Motion for Relief from Final Judgment. Among the reasons the Frosts gave for why Ayojiak's "claim of ownership to Lot 3B, Block 11 is questionable" is that the deed executed by the mayor in 1996 was not approved by the Togiak City Council after public notice.

**9.** Ayojiak alleges that

[t]he City and the Landowners in the area met in 1988 to resolve various trespass problems in the area, because people[']s houses were not on their lots and city streets trespassed across private property. The property in the area was resurveyed into Plat 90–5. Plat 90–5 required land exchanges from the City to lot owners and lot owners to each other as well as lot owners to the City. All parties in interest agreed...."

execute a deed to Ayojiak in 1996.[10] The Frosts cite Togiak City Ordinance Chapter 4.3, section 4, in support of their contention that the mayor did not have the authority to unilaterally grant Ayojiak Lot 3A and Lot 3B. Section 4 provides:

> The council may approve after public notice the conveyance and exchange of a parcel of city property for an equivalent parcel of property owned by another person subject to such conditions as the council may impose on the exchange, whenever in the judgement of the council it is advantageous to the city to make the property exchange.

Gary Carlos, President of the Togiak City Council in 1988, made a sworn statement in March 1996 that in 1988 the City Council approved the replatting of the land, and Ayojiak's Lot 3 was modified to become Lot 3A and Lot 3B. Carlos supported his claims with the September 4, 1988, City Council Meeting Minutes (Meeting Minutes). The Meeting Minutes reveal that the City Council discussed the approval of the land survey. The Meeting Minutes, however, do not refer specifically to Ayojiak's land. Additionally, there is no evidence that the mayor or the city council gave public notice of the land exchange either in 1988 or 1996. Thus, whether Ayojiak legitimately received Lot 3A and Lot 3B in exchange for Lot 3 is arguable.

In light of the fact that the City may not have taken the proper procedural steps when it deeded Ayojiak Lot 3B, the superior court's errors cannot be considered harmless. Moreover, although the superior court found that the Frosts may have acted in bad faith, and had no claim to Lot 3B, the uncertainty regarding the status of the 1996 warranty deed to Lot 3B supports the conclusion that we must reverse the judgment of the superior court and remand this case for further findings. Specifically, the superior court should determine whether Ayojiak holds valid title to Lot 3B. If the court finds Ayojiak's title valid, it should eject the Frosts. It should recalculate the back rent the Frosts owe Ayojiak so as to reflect the fact that Ayojiak acquired legal title to Lot 3B in 1996, not 1992, the date from which the final judgment currently awards Ayojiak back rent. With respect to back rent between 1992 and 1996, the court should consider whether Ayojiak is equitably entitled to back rent for this period in view of the 1988 replat and the actions associated therewith. If the superior court finds Ayojiak's title invalid, it should dismiss his ejectment action against the Frosts.

## IV. CONCLUSION

We REVERSE the superior court's order denying the Frosts' Rule 60(b) motion and granting Ayojiak's Rule 60(a) motion to amend the final judgment, and REMAND the case for further proceedings consistent with this opinion.

---

**10.** While the "City of Togiak" was listed as the "Grantor" on the 1996 warranty deed, Isaac Tuday, Togiak Mayor, was the sole signer of the deed.