NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STEVEN MUCH, | ) | |
| | ) | Supreme Court No. S-16225 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-04466 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ALASKA POLICE STANDARDS | ) | AND JUDGMENT* |
| COUNCIL, | ) | |
| | ) | |
| Appellee. | ) | No. 1673 – April 11, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Charles W. Ray, Jr., Judge.

Appearances: Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant. David A. Wilkinson, Assistant Attorney General, Fairbanks, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.  INTRODUCTION

The Alaska Police Standards Council decertified a police officer for lack of good moral character following an administrative hearing. The officer appealed to the superior court, arguing that he was not given adequate notice of the definition of good moral character before the hearing and that the Council misapplied the law in reaching

---

\*      Entered under Alaska Appellate Rule 214.

its decision. The superior court affirmed the Council's decertification decision, and the officer appealed to this court. We conclude that the former officer received adequate notice, and we reject his argument that the Council misapplied relevant law in reaching its decision. We therefore affirm the superior court's decision to affirm the Council's decertification order.

## II.    FACTS AND PROCEEDINGS

The Council issues certificates to individuals who have completed the required training and possess the necessary qualifications to be a police officer.[1] If the Council finds that a police officer does not possess these qualifications, the Council may revoke the officer's certification.[2] An individual cannot be appointed as a police officer, except on a probationary basis, without a police certification issued by the Council.[3]

Steven Much was an Anchorage Police Department (APD) officer. After learning of APD's investigations into two events in which Much allegedly behaved inappropriately, the Council held an administrative hearing and revoked his police certificate. The allegations before the Council involved an out-of-state welfare check[4] that Much had requested for his girlfriend's child, and his inadequate investigation of and inaccurate police report about a misdemeanor assault.

---

[1]    AS 18.65.240.

[2]    AS 18.65.240(c); 13 Alaska Administrative Code (AAC) 85.110(a).

[3]    *See id.*

[4]    A welfare check is a common procedure in which a police officer goes to a residence or other location to check on the welfare of an individual.

A.    **Facts**

1.    **The welfare check**[5]

Much's girlfriend, B.L., had a daughter from a previous relationship.[6]  A Florida custody order gave the girl's father primary custody.  While the child was visiting from Milwaukee, Wisconsin, in the summer of 2010, B.L. filed a petition to modify custody in the Anchorage superior court.  B.L. alleged that the father had not facilitated telephone contact between her and her daughter as required by the Florida order.  The Alaska court dismissed B.L.'s motion for lack of jurisdiction.  The parties allegedly agreed off the record but in front of the judge that the child would keep a cell phone so B.L. could contact her.  Much was at the courthouse that day, but remained outside the courtroom with the child.

In September 2010, two weeks after the child returned to Milwaukee, the child's grandfather contacted APD seeking a welfare check for the child.  After learning that the Milwaukee police would only respond to a request from another police department, the child's grandfather asked Much to make the request.  Much called dispatch and told the dispatcher that a court order required that B.L. be able to reach her daughter at all times, and that he was concerned the child's father had taken the child's cell phone and was preventing communication.  APD requested a welfare check by the Milwaukee police, stating that the child did not have her cell phone as required by court order.

After a Milwaukee police officer contacted APD with concerns about the propriety of the requested welfare check, APD conducted an internal investigation.

---

[5]    We adopt the unchallenged facts from the Administrative Law Judge (ALJ)'s decision.

[6]    We use initials to protect the privacy of individuals who are not parties to this litigation.

Much was interviewed in October. He claimed to have seen the Florida court order and stated that an Alaska judge had ordered that the child have a cell phone at all times. APD assigned a new investigator to investigate the incident further in February 2011. That investigator discovered that there was no order requiring the child to have constant cell phone access. When questioned, Much admitted that he had only been told of the cell phone agreement by others and that he had seen but had not read the Florida court order. He acknowledged that he had not informed anyone at dispatch or the previous investigator that he had only secondhand information. The investigator concluded that Much had violated two APD policies: a "General Conduct" policy requiring officers to remain within the limits of their lawful authority and another requiring honesty in all official communications.

### 2. The assault investigation and report

In January 2011 K.H. was assaulted at a hotel.[7] K.H. reported the assault to APD the next morning, identified her primary assailant by name, and said she wanted to press charges.

Much was dispatched to K.H.'s home. She told Much that she had been assaulted, wanted to press charges, and she identified her primary assailant. Much suggested that K.H. make a citizen's arrest or obtain a restraining order. After Much left, K.H. called the hotel and asked for any security video recording of the incident. Hotel staff gave the recording to an officer investigating an unrelated incident at the hotel.

---

[7]     K.H. testified at the administrative hearing about the assault and the APD actions that followed her report. Much did not testify or present admissible evidence disputing her account and the ALJ adopted her account. Much disputes a few facts from K.H.'s account in his brief, but does not challenge the ALJ's finding that there was no admissible evidence to challenge her account.

That officer reviewed the video before providing a copy to K.H. He then interviewed her, filed a police report, and obtained an arrest warrant for the assailant.

A week after Much's contact with K.H. an APD records clerk asked him to write a report about the call. Much refused until a superior officer ordered him to write a report on his initial interview with K.H. The report stated that K.H. did not want to press charges, had been unsure who had hit her, and had identified two possible assailants.

APD investigated this incident in March 2011. Much stated that he could not remember whether K.H. named her assailants during the interview and that he had taken the names in his report from the other officer's report. Much admitted that he had not investigated the call properly. The investigator found that Much had committed four violations of APD policy by failing to complete an appropriate investigation and report, failing to assist a civilian in making a citizen's arrest, being dishonest, and failing to preserve audio recordings.

### 3. Agreement between Much and APD

In the spring of 2011 Much, the police union president, and APD Chief Mark Mew came to an agreement for Much to resign. The precise date and terms of the agreement are unclear from the record, but Chief Mew apparently agreed to let Much resign rather than face disciplinary action and not to put any negative information in Much's personnel file. Much resigned in May 2011.

After receiving notice of Much's intended resignation, APD filed an F-4 form with the Council.[8] The form indicated that Much had been under investigation, had

---

[8]      An F-4 form is a personnel report that a police department sends to the Council if a police officer is no longer employed by the police department. 13 AAC 85.090(b). Police departments are required to disclose why the person is no longer
(continued...)

resigned in lieu of termination, and that APD recommended decertification and would not rehire Much. After reviewing the F-4 form, the Council's executive director requested more information from APD. APD sent an explanation to the Council summarizing APD's investigations into Much, stating that APD had decided to terminate him before he resigned, and recommending decertification.

Much learned of the F-4 form in the summer of 2012 and contacted the union. The union complained to APD that the F-4 form violated the agreement. Chief Mew then sent the Council an amended F-4 form and explanation in January 2013. The new form stated that Much did not resign in lieu of termination and that decertification was not recommended, but affirmed that Much had been under investigation and would not be rehired.

### B. Proceedings

#### 1. The administrative hearing

The Council's executive director filed a formal accusation against Much in February 2013. The Council sent Much the accusation along with a letter explaining that the Council was moving to revoke his police officer certificate and would proceed if Much did not file a notice of defense. The accusation sought Much's decertification under AS 18.65.240(a) and (c), 13 AAC 85.110, and the Administrative Procedure Act.[9] It recounted, in 13 short paragraphs over 2 pages, Much's conduct in the welfare check incident and the K.H. matter. The accusation alleged that the described conduct demonstrated that Much did not meet the minimum standards for a certified police

---

[8]      (...continued)
employed, whether "the resignation was to avoid an adverse action by the police department," and whether "any resignation or termination involved a finding or allegation of dishonesty, misconduct, or lack of good moral character." *Id.*

[9]      AS 44.62.330 *et seq.*

officer, lacked good moral character, and was dishonest, which created grounds for discretionary revocation under 13 AAC 85.110(a)(3).[10] Much filed a notice of defense and requested a hearing. The Council then referred the case to the Office of Administrative Hearings to be tried by an ALJ. The Council prepared an administrative record and exchanged witness lists and prehearing briefs with Much. None of the prehearing materials cited the definition of "good moral character" described in 13 AAC 85.900(7).[11] The ALJ held a two-day hearing in August 2013. Much represented himself.

### 2. The Council's decision and Much's appeal

In October 2013 the Office of Administrative Hearings sent all parties the ALJ's proposed decision.[12] In it, the ALJ cited the regulatory definition of good moral character from 13 AAC 85.900(7), including its component parts of "honesty, fairness, and respect for the rights of others and for the laws." The ALJ noted that in a previous decision in a similar case, *In re Bowen*,[13] the Council found that it had to find that an officer lacked each of the four character traits under 13 AAC 85.900(7) in order to

---

[10] This provision in the Alaska Administrative Code provides that the Council may revoke a police officer's certificate if he or she is found not to meet the basic standards to be a police officer. 13 AAC 85.110.

[11] "[T]he absence of acts or conduct that would cause a reasonable person to have substantial doubts about an individual's honesty, fairness, and respect for the rights of others and for the laws of this state and the United States; for purposes of this standard, a determination of lack of 'good moral character' may be based upon a consideration of all aspects of a person's character." 13 AAC 85.900(7).

[12] After a hearing, the ALJ writes a proposed decision. The ALJ sends the proposed decision to the parties and, under AS 44.64.060, the parties have the right to file proposed changes. The ALJ considers the proposals and either adopts or rejects them, then submits the updated decision to the Council for a vote.

[13] OAH No. 10-0327-POC at 15 (May 16, 2011).

decertify an officer under that regulation. He noted that the Council's Executive Director, Kelly Alzaharna, had not mentioned *Bowen*, nor focused on any element other than honesty and integrity. The ALJ nonetheless applied *Bowen* to Much's case, noting that prior decisions should generally be followed absent a documented reason for a new interpretation and that the Council had not argued at the hearing that another interpretation should be applied. The ALJ found that both allegations against Much raised substantial doubts as to Much's honesty, fairness, and respect for others and for the law. The ALJ also found that the faulty F-4 form had no bearing on the Council's decertification decision. He therefore recommended that Much's police certificate be revoked.

After receiving the proposed decision Alzaharna filed a proposal asking that the decision be revised to reject *Bowen* and instead adopt an interpretation of 13 AAC 85.900(7) that would allow a finding of a lack of good moral character based on substantial doubt as to any one of the listed factors. Much did not file any response. The ALJ then forwarded his proposed decision to the Council, explaining that he applied *Bowen* because it had not been challenged in the hearing and further that applying Alzaharna's proposed standard would not affect his recommendation. The Council adopted the ALJ's decision as its final determination in December 2013.

Much appealed the Council's decision to the superior court in January 2014. He argued that the Council had not provided him adequate notice of the factors that constituted good moral character under 13 AAC 85.900(7) or how his actions demonstrated a lack of good moral character under those factors, that it had abused its discretion in analyzing his character, and that the initial F-4 form had tainted the entire decertification process. The Council responded that Much had received proper notice and that the F-4 was irrelevant. The Council also argued that *Bowen* was no longer good law and asked the court to apply a test that would allow a finding of lack of good moral

character based on the lack of any one of the four character elements. The superior court affirmed the Council's decertification decision and found that Much had received adequate notice. The court also found that it was a "misapplication of law to employ the test from *Bowen*," but that its application was harmless, as it resulted in greater protection for Much and the record supported a finding that Much lacked honesty.

Much appeals.

## III. STANDARD OF REVIEW

"Where the superior court is acting as an intermediate court of appeals, we directly review the agency decision."[14] "Questions of fact are reviewed for substantial evidence" and "[q]uestions of law involving agency expertise are reviewed using the reasonable . . . basis test."[15] The Council's decision to revoke a police officer's certificate if the officer is not of good moral character is "a policy determination involving agency expertise" which we review "for a rational or reasonable basis."[16] "We review an agency's application of its own regulations for whether the agency's decision was 'arbitrary, unreasonable, or an abuse of discretion.' "[17]

We review questions of due process de novo.[18]

---

[14] *Alaska Police Standards Council v. Parcell*, 348 P.3d 882, 886 (Alaska 2015) (quoting *West v. Municipality of Anchorage*, 174 P.3d 224, 226 (Alaska 2007)).

[15] *Id.* (quoting *West*, 174 P.3d at 226).

[16] *Id.* at 888.

[17] *Id.* at 886 (quoting *Alaska Exch. Carriers Ass'n v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 461 (Alaska 2009) (quoting *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007))).

[18] *See Dennis O. v. Stephanie O.*, 393 P.3d 401, 405 (Alaska 2017) (citing *del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016)).

## IV.   DISCUSSION

### A.   Much Had Adequate Notice Of The Definition Of Good Moral Character To Satisfy Due Process.

Much argues that the Council violated his due process rights by failing to provide notice of either the definition of good moral character in 13 AAC 85.900(7) or the *Bowen* four-part character test that the Council applied to his case.  We disagree.

The Council is required to comply with due process in its decertification proceedings.[19]  Due process requires that parties have "sufficient notice and information to understand the nature of the proceedings" to be able to prepare their cases.[20]  Much received an accusation explaining the Council's authority to revoke his certificate and the actions on which the Council was basing its accusations.[21]  Much received a copy of the complete administrative record and the Council's prehearing brief which reiterated the regulatory basis for the decertification and the conduct at issue.  He participated in a two-day administrative hearing at which the allegations against him were discussed in detail.

Much contends that he should have been given notice of the factors in the governing regulation and *Bowen*'s requirement that all four factors be proved against him[22] so he could focus his defense and adequately prepare for the hearing.  The

---

[19]      Administrative agency proceedings must comply with due process. *State, Dep't of Nat. Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1064 (Alaska 2004) (citing *K & L Distribs., Inc. v. Murkowski*, 486 P.2d 351, 357 (Alaska 1971)).

[20]      *Groom v. State, Dep't of Transp.*, 169 P.3d 626, 635 (Alaska 2007) (quoting *North State Tel. Co. v. Alaska Pub. Util. Comm'n*, 522 P.2d 711, 714 (Alaska 1974)).

[21]      The accusation cites AS 18.65.240(a) and (c) and 13 AAC 85.110(a)(3).

[22]      OAH No. 10-0327-POC at 15 (May 16, 2011).

governing regulation, 13 AAC 85.900(7), lists four components of good moral character: honesty, fairness, and respect for law and the rights of others.[23] Under the *Bowen* standard the Council had to prove that each of these qualities had been cast into doubt in order to decertify Much.[24]

While none of the Council's pleadings explicitly provided the regulatory definition of good moral character or discussed *Bowen*,[25] that absence did not constitute a violation of due process. "[T]he crux of due process is opportunity to be heard and the right to adequately represent one's interests. Adequate notice is the common vehicle by which these rights are guaranteed."[26] The Council's listing of the regulations authorizing decertification and Much's alleged conduct provided sufficient notice to Much of the allegations against him and the applicable regulations. Our case law makes clear that regulated entities are held to have constructive notice of how agencies will interpret statutes from their text,[27] much as litigants have constructive notice of actions we may

---

[23]     13 AAC 85.900(7).

[24]     *See In re Bowen*, OAH No. 10-0327-POC at 15 (May 16, 2011) (The trooper's "honesty, fairness, and respect for the rights of others and the law" were at issue. "To warrant discretionary revocation, the executive director must establish that [the trooper's] conduct raises substantial doubt regarding all of these matters.").

[25]     The four factors of the regulatory definition were only explicitly stated when Alzaharna read them to Much during her testimony.

[26]     *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 570-71 (Alaska 2006) (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192-93 (Alaska 1980)).

[27]     *Marathon Oil Co. v. State, Dep't of Nat'l Res.*, 254 P.3d 1078, 1087 (Alaska 2011) (finding that Department of Natural Resource's consistent interpretation of a statute sufficiently put parties on notice of that interpretation especially as it was a reasonable interpretation of statutory language); *Alyeska Pipeline Serv. Co.*, 145 P.3d at
(continued...)

take in future cases by virtue of our previous statements and rulings.[28] The same principle applies to regulations: *Bowen* and 13 AAC 85.900(7) were published and freely available. Their publication and promulgation gives parties constructive notice of those regulations and the legal definitions they contain.[29] The ALJ decided the issue that all parties understood was before it — Much's good moral character — based on the standards that the Council specifically and publicly promulgated for the purpose of defining good moral character.[30] The Council was not required to provide Much with legal definitions when that information was clearly at issue, available in published regulations, and discussed in publicly available decisions.[31]

---

[27] (...continued)
570-71 (holding that careful reading of statute should have put party on notice that it might be subject to fees).

[28] *Trudell v. Hibbert*, 299 P.3d 1279, 1281 (Alaska 2013) (holding that two previous court decisions put parties on "constructive notice . . . of the possibility of an award of attorney's fees").

[29] *State v. Alaska Land Title Ass'n*, 667 P.2d 714, 725-26 (Alaska 1983).

[30] *Cf. Bruce L. v. W.E.*, 247 P.3d 966, 977 (Alaska 2011) (finding "fundamentally unfair" a superior court's determination of an issue in a case based on a fact neither party disputed); *Frost v. Spencer*, 218 P.3d 678, 682 (Alaska 2009) ("[A]pplying an unanticipated body of law could be an abuse of discretion if doing so were to make different outcome-determinative facts relevant.").

[31] We have held that trial courts have a duty to inform self-represented litigants of "the proper procedure for the action he or she is obviously attempting to accomplish." *Bush v. Elkins*, 342 P.3d 1245, 1253 (Alaska 2015) (quoting *Breck v. Ulmer*, 745 P.2d 66, 74 (Alaska 1987)). However, the duty to advise self-represented litigants of procedures does not encompass a duty to provide such parties with publicly available regulations.

**B.     It Was Not Error To Apply *Bowen*.**

*Bowen* was decided before this case by the same agency.[32]  When Much's decertification case was decided, *Bowen* was the controlling precedent.  The Council did not contest the application of *Bowen* during the hearing, but asked the ALJ to apply a different interpretation of 13 AAC 85.900(7) after receiving the ALJ's proposed decision.  The ALJ acknowledged that Alzaharna had argued that *Bowen* be revisited in another pending case[33] but declined to amend his proposed decision.  At the time the Council revoked Much's police certificate, *Bowen* was still the controlling precedent and the ALJ correctly relied on it.[34]

**C.     The ALJ's Factual Findings Were Supported By Substantial Evidence And The Council's Decision To Revoke Much's Police Certificate Had A Reasonable Basis.**

Much argues that there was no reasonable basis for the Council's determination that Much's conduct raised substantial doubt as to each of the aspects of character named in 13 AAC 85.900(7) and challenges the Council's underlying factual findings.

---

[32]     OAH No. 10-0327-POC (May 16, 2011).

[33]     *Bowen* was ultimately overturned in *In re E.X.*, OAH No. 13-0473-POC, at 15-18 (Dec. 23, 2013).

[34]     Regardless, the *Bowen* decision was more favorable for Much than the new standard.  The ALJ required the Council to show that Much failed to satisfy *each* of the four elements of good moral character.  The standard that replaced *Bowen* required the Council to demonstrate only the failure to satisfy *any one* of the elements of 13 AAC 85.900(7).  *Id.* ("A substantial deficit in any combination of these elements could establish an absence of good moral character, even if for some elements no deficit or doubt was proved."); *see also In re Gilmore*, OAH No. 15-1087-POC, at 4 (March 10, 2016).

"Substantial evidence to support factual findings is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[35]  The ALJ found that Much falsely told APD dispatchers and investigators that an Alaska court had ordered his girlfriend to have 24/7 contact with her daughter when no such order existed, and that he misled an APD investigator by indicating that he had personally witnessed the relevant court proceedings and read the Florida custody order.  Much's statements to dispatch and to the APD investigator, as well as the evidence that there was no such court order, supported these findings.  The ALJ found that Much made false statements about his interview with K.H. in his report and in the subsequent investigation into his conduct.  K.H.'s testimony and her conduct before and after her interview with Much supported this finding.  The court's factual findings are supported by substantial evidence.

These factual findings create a reasonable basis for the Council's ultimate determination that Much lacked good moral character.[36]  "When applying the reasonable basis test, we 'seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination.' "[37]  The ALJ's findings that Much made dishonest statements in his

---

[35]     *Rivera v. Wal-Mart Stores, Inc.*, 247 P.3d 957, 962 (Alaska 2011) (quoting *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009) (quoting *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000))).

[36]     Much argues that the ALJ abused its discretion and clearly erred in making this finding.  The appropriate standard of review for the Council's decision to revoke a police officer's certificate for a lack of good moral character is whether there was a reasonable basis for the decision.  *Alaska Police Standards Council v. Parcell*, 348 P.3d 882, 888 (Alaska 2015).

[37]     *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299

(continued...)

request for the welfare check, in his police report on his interview with K.H., and during the subsequent investigations create a reasonable basis for the determination that Much lacked honesty, as well as fairness, respect for the rights of others, and the law. The ALJ and Much both define fairness as conduct "free from self-interest, prejudice or favoritism." Much exhibited favoritism by requesting a welfare check for his girlfriend that would not have been performed under normal APD procedures. Much's failure to adequately investigate K.H.'s complaint and his dishonest report afterward demonstrated prejudice against her interests and a willingness to "use[] his official position to cover up his errors." The ALJ concluded that Much's dishonest request for an unwarranted welfare check demonstrated disrespect for the father of B.L.'s daughter and for the law enforcement process. And Much's disrespect for K.H.'s rights was demonstrated by his dishonest police report and his admittedly inadequate investigation into her complaint. The ALJ found that the false statements in his K.H. police report likewise demonstrated "a lack of respect for any subsequent legal proceedings." These determinations, and the ultimate determination that Much did not meet the requirement of having good moral character, had a reasonable basis.

## D.    The F-4 Forms Do Not Affect This Case.

Much argues that it was an abuse of discretion for the Council and the superior court to discount the impact of APD's erroneous F-4 form. He claims that APD compromised his rights in two ways: (1) APD's delay in filing an F-4 form harmed his "ability to obtain character witnesses"; and (2) the first F-4 form, which falsely stated that Much resigned in lieu of termination and recommended decertification in violation of his agreement with APD, tainted all further proceedings against him.

---

**37**     (...continued)
(Alaska 2014) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

At the administrative hearing Much did not claim to have been prejudiced by APD's delay. Much did raise that the F-4 forms were sent late to the Council but did not make any arguments about prejudice arising out of that delay until this appeal. This argument is waived, both because it was not raised before the Council[38] and because it is not adequately briefed on appeal.[39]

Much's argument that the F-4 form tainted the decertification proceeding has no merit. Disciplinary actions by the Council are separate from disciplinary actions taken by police departments.[40] The Council was not a party to the agreement between Much and Chief Mew, the Council's accusation did not refer to the F-4 in any way, and the ALJ did not mention or rely on it in his findings except to address Much's complaints. The Council's director testified that the Council's investigation would have proceeded identically if it had received only the second F-4 and accompanying narrative, which accurately explained that Much had resigned while under investigation.

Furthermore, the Council made a discretionary decision to decertify Much based upon the information from the second F-4. If it had relied upon the inaccurate first F-4, which stated that Much had resigned in lieu of termination, then his decertification

---

[38] *See Hoffman Const. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the first time on appeal." (citing *Frost v. Ayojiak*, 957 P.2d 1353, 1355-56 (Alaska 1998))).

[39] *See Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 372 (Alaska 2014) ("Points that are inadequately briefed are considered waived." (quoting *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 608 n.10 (Alaska 2003))).

[40] *See* 13 AAC 85.110(f); *see also Alaska Police Standards Council v. Parcell*, 348 P.3d 882, 883 (Alaska 2015).

would have been mandatory.[41]  Accordingly, any alleged deficiency in the F-4 forms is irrelevant to the Council's decision.[42]

## V.    CONCLUSION

The superior court's decision affirming the Council's decertification decision is AFFIRMED.

---

[41]    *Compare* 13 AAC 85.110(a) ("The council *may* revoke" a certificate if the officer, among other things, lacks good moral character (emphasis added)) *with* 13 AAC 85.110(b) ("The council *will* revoke" a police certificate if the officer resigns under circumstances casting doubt on the officer's good moral character (emphasis added)).

[42]    It is also not clear if the alleged agreement between Much, the union, and the APD chief was even legal. 13 AAC 85.090(c) provides that "[a] participating police department may not formally or informally agree not to report to the council under this section." *See also* 13 AAC 85.090(b).